1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FREDDY AVALOS,                         No.  2:15-cv-2222 TLN AC

12                    Petitioner,

13          v.                              FINDINGS AND RECOMMENDATIONS

14   SCOTT FRAUENHEIM, Warden,

15                    Respondent.

16

17          Petitioner is a California state prisoner represented by counsel and proceeding with an

18   application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition challenges

19   petitioner's 2013 conviction for assault with a firearm and shooting at an occupied vehicle.  ECF

20   No. 1.  Respondent has answered, ECF No. 11, and petitioner filed a traverse, ECF No. 18.

21                                  BACKGROUND

22   I.      Proceedings In the Trial Court

23          A.  Preliminary Proceedings

24          Petitioner was charged in this San Joaquin County with (1) attempted murder, with

25   enhancements for personal discharge of a firearm and for infliction of great bodily injury; (2)

26   assault with a firearm, with enhancements for use of a firearm in commission of a felony and for

27   infliction of great bodily injury; (3) and shooting at an occupied motor vehicle, with an

28   ////

                                          1

1  enhancement for personal discharge of a firearm.  1 CT 104-107.[1]

2        B.  <u>The Evidence Presented at Trial</u>

3          1.  <u>Prosecution Case</u>

4        On February 18, 2011, at approximately 1:00 in the morning, petitioner was driving his

5  car in the city of Tracy.  Several friends were passengers.  At the same time, Brandon Areia was

6  driving his truck in the vicinity.  As petitioner came down an off-ramp and proceeded through a

7  green light, Areia ran through the opposing red light and crashed into petitioner's car, disabling it.

8  As the truck tried to leave the scene, two of petitioner's passengers tried to stop it and take the

9  keys away from its driver.  The driver, who appeared drunk, drove away, running another red

10  light, then headed back toward the scene of the accident.

11        A waitress at the nearby Denny's restaurant heard the collision and saw the truck driving

12  away and then returning toward the accident scene.  She saw petitioner emerge from the driver's

13  side of the damaged car and shoot at the truck when it passed him without stopping.  Another

14  Denny's employee saw petitioner with a gun, heard the shooting, and saw that the truck did not

15  stop.  Petitioner gave the gun to one of his friends, who tossed it behind a nearby gas station.

16        Police responded to the scene.  A responding officer found petitioner sitting in his car.

17  Petitioner denied hearing a shooting.  He smelled like alcohol.  He told the officer a truck had hit

18  him and drove away.  The officer found Areia inside his truck, bleeding from a gunshot wound.

19  Areia also smelled like alcohol.

20        Areia had suffered a bullet wound in the back left shoulder.  The bullet had lodged in the

21  middle of his back, where it remained, causing continuing pain.  At the emergency room after the

22  incident, he was noted to be intoxicated.  Areia denied that alcohol had affected his driving, and

23  claimed that he failed to stop after the accident because he feared for his life.

24        Officers at the scene found three .45 casings.  Areia's truck had front end damage from

25  the collision, and a bullet hole through the driver's door.  At least two bullets had hit the truck.

26  There was an expended bullet in petitioner's car.  The gun was found near the gas station, and an

27

28     [1] "CT" refers to the Clerk's Transcript of Appeal, in three volumes, Lodged Docs. 1, 2 & 3.

1  empty gun box in the car.

2    In a recorded interview the next morning, petitioner initially denied owning a gun but later

3  admitted having one for protection.  He said that he had been driving a car involved in a crash

4  with a pickup truck.  The truck's driver sped through a red light, hit petitioner's car, and then left

5  the scene.  Petitioner's car was inoperable, but he told his two friends to chase the truck because it

6  "seemed like [the truck's driver] was trying to leave the scene."  After stopping briefly down the

7  street, the truck came back toward petitioner and then "everything just went crazy."  Petitioner

8  eventually admitted that he had shot at the truck to stop it from driving away.  He was angry

9  because he was a hard-working man, he needed his car for commuting to work, and the truck

10  driver (who was probably drunk) was trying to get away, so he tried to shoot the truck's tires out

11  as it passed.  He then ran "like hell, just trying to get rid of [the gun]."  Petitioner insisted, "[M]y

12  intentions weren't to hurt him, my intentions were for him to stop."

13    2.  Defense Case

14    Mario Aviles, one of petitioner's passengers, testified about the accident.  He and a friend

15  had chased the truck down and told the driver the police were on their way, and the driver said "I

16  gotta go" and "floored it."  When the truck headed back to the accident scene, Aviles thought it

17  was going to hit the car again.

18    One of the responding officers testified that the victim, Areia, had appeared to be under

19  the influence of alcohol, and had made inconsistent statements.

20    Petitioner testified that he was upset because a drunk driver had "mess[ed] up [his] life."

21  Things had been going well for him before the accident; he had a job and a baby on the way, and

22  he feared losing the job if he no longer had a functioning vehicle.  When the truck came back past

23  him, he shot "towards the direction that the truck was moving in."  He shot "out of anger, out of

24  heat of passion, out of frustration."  Petitioner conceded that he was in no danger when the victim

25  drove past him.

26    C.  Outcome

27    On January 30, 2013, the jury returned guilty verdicts on assault with a deadly weapon

28  and shooting at an occupied vehicle, and found the alleged enhancements related to those offenses

3

1    true as charged.  The jury found petitioner not guilty of attempted murder, and not guilty of the

2    lesser included offense of attempted involuntary manslaughter.  2 CT 497-498.

3          On April 15, 2013, petitioner was sentenced to the mid-term of 5 years on Count 3,

4    shooting at an occupied vehicle, consecutive to 25 to life on the enhancement under Cal. Penal

5    Code § 12022.53(d).[2]  Shorter sentences were imposed on the other counts and enhancements, but

6    those were all stayed.  Accordingly, the total aggregate term of imprisonment was 30 years to life.

7    2 CT 571-572.

8    II.    Post-Conviction Proceedings

9          Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

10   conviction on May 27, 2014.  Lodged Doc. 10.  The California Supreme Court denied review on

11   August 1, 2014.  Lodged Doc. 12.

12         Petitioner filed a petition for writ of habeas corpus in the Superior Court of San Joaquin

13   County on September 15, 2015, which was denied in a written decision on October 7, 2015.

14   Lodged Docs. 13, 14.  Petitioner filed no further applications for state habeas relief.

15   STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

16         28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

17   1996 ("AEDPA"), provides in relevant part as follows:

18         (d) An application for a writ of habeas corpus on behalf of a person
19         in custody pursuant to the judgment of a state court shall not be
           granted with respect to any claim that was adjudicated on the merits
20         in State court proceedings unless the adjudication of the claim –

21         (1) resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established Federal law, as
22         determined by the Supreme Court of the United States; or

23         (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
24         State court proceeding.

25   [2]  This subsection provides: "Notwithstanding any other provision of law, any person who, in the
26   commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of
     Section 26100, personally and intentionally discharges a firearm and proximately causes great
27   bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice,
     shall be punished by an additional and consecutive term of imprisonment in the state prison for 25
28   years to life."  Cal. Penal Code § 12022.53(d).

4

1    The statute applies whenever the state court has denied a federal claim on its merits,

2    whether or not the state court explained its reasons.  Harrington v. Richter, 582 U.S. 86, 99

3    (2011).  State court rejection of a federal claim will be presumed to have been on the merits

4    absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

5    489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

6    decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

7    may be overcome when there is reason to think some other explanation for the state court's

8    decision is more likely."  Id. at 99-100.

9    The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

10   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

11   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

12   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

13   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

14   (2013).

15   A state court decision is "contrary to" clearly established federal law if the decision

16   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

17   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

18   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

19   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

20   was incorrect in the view of the federal habeas court; the state court decision must be objectively

21   unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

22   Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

23   Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

24   reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

25   words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

26   Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

27   confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

28   724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

1  summarily, without a reasoned opinion.  In <u>Richter</u>, <u>supra</u>, the Supreme Court held that when a

2  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

3  must determine what arguments or theories may have supported the state court's decision, and

4  subject those arguments or theories to § 2254(d) scrutiny.  <u>Richter</u>, 582 U.S. at 102.

5                                            DISCUSSION

6   I.       <u>Claim One: Unconstitutional Failure to Instruct Jury on Lesser Included Offense</u>

7                A. <u>Petitioner's Allegations and Pertinent State Court Record</u>

8           Petitioner claims that his Sixth Amendment right to a jury trial and Fourteenth

9  Amendment right to due process were violated by the trial court's failure to instruct the jury on

10  negligent discharge of a firearm, as a lesser included offense of shooting at an occupied vehicle.

11  ECF No. 1 at 14, 17-21.

12          The jury was instructed on the elements of shooting at an occupied motor vehicle, Cal.

13  Penal Code § 246, accordingly to CALCRIM 965.  2 RT 422-423;[3] 2 CT 434.  The defense

14  requested that the jury also be instructed on negligent discharge of a firearm, Cal. Penal Code §

15  246.3(a), as a necessarily included lesser offense.  2 RT 367, 370.  The court denied the request,

16  finding that no "substantial evidence" justified the instruction.  2 RT 371, 373.  The court

17  explained that petitioner had admitted shooting at the car, and that "it was not the defense's

18  theory that the gun was simply shot in the air or was a negligent discharge of a firearm."  2 RT

19  372.

20                B. <u>The Clearly Established Federal Law</u>

21          The U.S. Supreme Court has never held that the Constitution requires a state trial court to

22  instruct a jury on a lesser included offense in a non-capital case.  It is clearly established that a

23  defendant in a capital case has a constitutional right to a jury instruction on a lesser included

24  offense if there is evidence to support the instruction.  <u>Beck v. Alabama</u>, 447 U.S. 625 (1980).

25  The Supreme Court, however, has expressly declined to decide whether this right extends to

26  defendants charged with non-capital offenses.  <u>Id.</u> at 638 n.14.

27  _____

28  [3]  "RT" refers to the Reporter's Transcript on Appeal, in two volumes, Lodged Docs. 5 & 6.

1   Generally, errors in instructing the jury implicate a defendant's constitutional rights only

2 if they "so infect[] the entire trial that the resulting conviction violates due process." Estelle v.

3 McGuire, 502 U.S. 62, 71 (1991).  Alleged instructional error "must be considered in the context

4 of the instructions as a whole and the trial record."  Id. at 72.

5    C.  The State Court's Ruling

6   This claim was raised on direct appeal.  Because the California Supreme Court denied

7 discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

8 decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

9 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).[4]

10   The California Court of Appeal ruled as follows:

11
12   Defendant contends the trial court erred in failing to instruct on
   grossly negligent discharge of a firearm (§ 246.3), as a lesser offense
   to shooting at an occupied vehicle (id., § 246).  We agree the former
13   is included within the latter. (People v. Ramirez (2009) 45 Cal.4th
   980, 985-990 (Ramirez); People v. Overman (2005) 126 Cal.App.4th
14   1344, 1360-1362 (Overman).) However, for the reasons we outline
   post, we disagree with defendant's claim.

15   As summarized by our Supreme Court:

16    "Both offenses require that the defendant willfully fire a gun.
    Although the mens rea requirements are somewhat
17    differently described, both are general intent crimes. The high
    probability of human death or personal injury in section 246
18    is similar to, although greater than, the formulation of
    likelihood in section 246.3(a), which requires that injury or
19    death 'could result.' The only other difference between the
    two, and the basis for the more serious treatment of a section
20    246 offense, is that the greater offense requires that an

---

21 [4]  Respondent invites this court to conduct section 2254(d) review on the basis of the superior
22 court's order denying habeas relief, contending that this is the "last reasoned decision addressing
 the claim" within the meaning of Ylst.  ECF No. 11 at 20.  However, the "look through"
23 presumption established by Ylst is a means for determining the basis of a decision by a state's
 highest court.  When a state Supreme Court states no reasons for its rejection of a claim, it is
24 presumed to have adopted the reasoning of the lower court.  Ylst, 501 U.S. at 806.  It is the state
 Supreme Court's adoption of a lower court's ruling that makes the lower court's ruling the proper
25 subject of federal habeas review.  In this case, petitioner did not pursue his state habeas claims in
 the state's highest court.  The California Supreme Court denied review of this issue on direct
26 appeal, so its silent denial, Lodged Doc. 12, requires this court to "look through" to the
27 intermediate appellate court's opinion.  Ortiz, supra.  That opinion is the only decision to have
 been implicitly adopted by the California Supreme Court, and therefore is the subject of this
28 court's review.

inhabited dwelling or other specified object be within the defendant's firing range." (Ramirez, supra, 45 Cal.4th at p. 990.)

Here, the trial court correctly observed that it was required to instruct on the lesser offense if (and only if) there were substantial evidence from which a rational jury could find the lesser offense true, but not also find the greater offense true. (See People v. Breverman (1998) 19 Cal.4th 142, 162.)

Defendant made clear in his trial testimony that he intended to shoot toward the truck, and he told Detective Bauer that he was trying to shoot the truck's tires. Both versions show he was intentionally aiming at the truck, which he knew was occupied. Bullets actually hit the truck and its driver. On this evidence, no rational jury could find defendant guilty only of the lesser offense of grossly negligent discharge of a firearm, as defined by section 246.3.

Defendant posits that a jury could rationally find he acted without the malice required for a section 246 charge, and emphasizes that the jury acquitted him of attempted murder and attempted manslaughter (a lesser offense based on sudden quarrel or heat of passion).

An acquittal on one or more counts has no relevance when assessing liability as to counts resulting in conviction. (People v. Lewis (2001) 25 Cal.4th 610, 655-656; People v. Pahl (1991) 226 Cal.App.3d 1651, 1656-1657; see § 954 ["An acquittal of one or more counts shall not be deemed an acquittal of any other count"].) Further, the requirements for proving "malice" differ between section 246 and attempted murder.

"Section 246 is a general intent crime. [Citation.] As such, the term 'maliciously' in section 246 is defined by Penal Code section 7, item 4, as 'a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.' The court correctly instructed the jury on this point.

"Defendant cites People v. Salcido (1968) 263 Cal.App.2d 1, 6, for the proposition that the type of malice to which section 246 refers requires a demonstration that the act was without lawful 'justification, excuse or mitigating circumstance.' Salcido is inapplicable to a charge of discharging a firearm at an inhabited dwelling. Salcido is a murder case, and as explained by People v. Sekona (1994) 27 Cal.App.4th 443, 450-457, the malice required for a conviction of a general intent crime (there, mayhem) was different from the 'malice aforethought' required for murder." (People v. Watie (2002) 100 Cal.App.4th 866, 879.)

Here, the trial court instructed the jury (CALCRIM No. 600) that in order for it to find defendant guilty of attempted murder, defendant had to have "intended to kill" the victim. The question of defendant's intent to kill is separate and distinct from his intent to act wrongfully—namely to shoot at the victim's truck. Thus, the

8

1

> acquittal on the attempted murder count (and attendant lesser count
> of attempted manslaughter) is not indicative of an error contributing

2

> to conviction on the section 246 count. Both decisions appear logical
> despite their different conclusions, based on our review of the

3

> evidence heard by the jury in this particular case.

4

Lodged Doc. No. 10 at 3-5.

5

### D.  Exhaustion of State Court Remedies

6

Respondent raises the defense of non-exhaustion, arguing that petitioner did not make the

7

purported constitutional dimension of this claim clear in his petition for review in the California

8

Supreme Court.  ECF No. 11 at 18-20.  It is quite true that the exhaustion of state court remedies,

9

which is a prerequisite for federal habeas relief, requires fair presentation of the federal

10

constitutional issue to the state's highest court.  See Duncan v. Henry, 513 U.S. 364, 365-366

11

(1995) (per curiam).  However, the federal habeas court need not resolve exhaustion issues when

12

a claim may be denied on the merits.  See Granberry v. Greer, 481 U.S. 129, 135 (1987).

13

Because this claim must be denied regardless of its exhaustion status, the undersigned will bypass

14

the exhaustion issue.

15

### E.  Objective Reasonableness Under § 2254(d)

16

Insofar as the state court's decision was based on California law, it is unreviewable here

17

and can provide no basis for federal habeas relief.  See Lewis v. Jeffers, 497 U.S. 764, 780

18

(1990).  Moreover, even assuming an implicit rejection of the theory that the alleged error

19

violated due process, petitioner cannot establish that the failure to give the negligent discharge

20

instruction rendered his entire trial fundamentally unfair.  See Estelle, 502 U.S. at 72.  In

21

challenging the failure to give an instruction, a habeas petitioner faces an "especially heavy"

22

burden because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a

23

misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  Petitioner has not met

24

that burden, and no governing Supreme Court precedent suggests otherwise.

25

More fundamentally, petitioner cannot prevail in federal habeas on a claim that the Sixth

26

or Fourteenth Amendment required the court to instruct on a lesser included offense, because no

27

"clearly established federal law" recognizes such a constitutional rule applicable to non-capital

28

cases.  The holding in Beck v. Alabama, supra, was expressly limited to capital cases.  Petitioner

1    has acknowledged that "[t]he United States Supreme Court has never explicitly ruled on whether

2    a defendant has a due process right to a lesser included offense instruction in a non-capital case."

3    ECF No. 1 at 18.[5]

4         Under section 2254(d), federal relief is only available if the state court has denied a claim

5    due to an unreasonable application of U.S. Supreme Court precedent.  When the Supreme Court

6    has never recognized the specific constitutional principle on which a claim depends, there can be

7    no unreasonable application of clearly established federal law.  See Wright v. Van Patten, 552

8    U.S. 120, 125-26 (2008) (per curiam).  In light of the absence of Supreme Court precedent

9    applying Beck to non-capital cases, the Ninth Circuit has held that "the failure of a state court to

10    instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question

11    and will not be considered in a federal habeas corpus proceeding."  Solis v. Garcia, 219 F.3d 922,

12    929 (9th Cir. 2000) (per curiam).

13         Petitioner attempts to distinguish or limit Solis, see ECF No. 18-1 at 3, but his argument

14    misses the point.  Solis supports the conclusion that the rejection of a habeas claim based on

15    failure to give a lesser included offense instruction in a non-capital case is not an unreasonable

16    application of Beck.  The discussion in Solis of pre-AEDPA circuit authority, on which petitioner

17    relies, is irrelevant to the determination of what law is clearly established for AEDPA purposes.[6]

18    Even absent Solis, the undersigned would find this claim barred by section 2254(d) on grounds

19    that the U.S. Supreme Court has never held that the constitution requires state courts to provide

20

---

21   [5]  To support his assertion that a criminal defendant is entitled to a lesser included offense
instruction when the evidence would support it, petitioner cites to Keeble v. United States, 412

22   U.S. 205, 208 (1973).  ECF No. 1 at 17.  Keeble was a direct appeal in a federal criminal case; it
did not involve the constitutional rights of state court defendants.  Although the federal rule is

23   consistent with the California rule, the Supreme Court has never said that either rule is
constitutionally required.

24   [6]  Petitioner asserts that Solis "stated that 'the refusal by a court to instruct a jury on lesser
included offenses, when those offenses are consistent with defendant's theory of the case, may

25   constitute a cognizable habeas claim[.]"  ECF No. 18-1 at 3.  The quoted language is actually
from Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984).  See Solis, 219 F.3d at 929 (quoting

26   Bashor).  Bashor does not constitute "clearly established federal law" for purposes of habeas
review in a post-AEDPA case.  See Renico v. Lett, 559 U.S. 766, 779 (2010) (under AEDPA,

27   role of circuit authority is limited to the "illuminat[ion]" of United States Supreme Court
precedent).

28

1   lesser included offense instructions in non-capital cases.

2   II.      Claim Two: Erroneous Supplemental Instruction in Response to Question from Jury

3            A.  Petitioner's Allegations and Pertinent State Court Record

4   Petitioner claims that his rights to due process and a fair trial were violated by the trial

5   court's response to a question from the deliberating jury about the meaning of malicious intent.

6   ECF No. 1 at 14, 21-24.

7   During deliberations, the jury sent the following note to the judge: "We require the

8   definition of the word intent as it is written under the definition of maliciously."  2 RT 434; see

9   also 2 CT 519.  The court consulted with the parties.  2 RT 434-435.  Defense counsel noted that

10  the jury was "obviously addressing the malicious issue in the 246," and agreed that the court

11  should direct the jury back to the instruction on the elements of that offense.  2 RT 434.  At the

12  suggestion of the prosecutor, the judge decided to also refer the jury to the previously given

13  instruction on intent, CALCRIM 252.  2 RT 434-435.  The following response was sent to the

14  jury: "Please refer to instruction 965 (p. 31) and instruction 252 (p. 12) and any other instructions

15  you find appropriate on this issue."  2 CT 520.

16  Instruction 252 read as follows:

17
18          The crimes charged in Counts 2 and 3, the allegations, and certain
            lesser included offenses require proof of the union, or joint operation,
            of act and wrongful intent.

19
20          The following crime[s] [and allegation[s] require general criminal
            intent: Assault with a firearm as charged in count 2 and Shooting at
21          an occupied motor vehicle as charged in count 3 and the allegations
            of intentional and personal use of a firearm causing great bodily
22          injury, infliction of great bodily injury, and personal use of a firearm,
            and the lesser included offense of misdemeanor assault.  For you to
23          find a person guilty of these crime[s] [or to find the allegation[s]
            true], that person must not only commit the prohibited act, but must
24          do so with wrongful intent.  A person acts with wrongful intent when
            he or she intentionally does a prohibited act; however, it is not
25          required that he or she intended to break the law.  The act required is
            explained in the instruction for that crime [or allegation].

26          The following crime[s] require a specific intent or mental state:
            attempted murder as charged in count 1 and the lesser included
27          offense of attempted voluntary manslaughter.  For you to find a
            person guilty of these crimes, that person must not only intentionally
28          commit the prohibited act, but must do so with a specific (intent/
            [and/or] mental state).  The at and the specific (intent/ [and/or mental

11

state] required are explained in the instructions for that crime.

2 CT 465.

Instruction 965 read in pertinent part as follows:

> The defendant is charged in Count 3 with shooting at an occupied motor vehicle in violation of Penal Code section 246.
>
> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1.  The defendant willfully and maliciously shot a firearm;
>
> 2.  The defendant shot the forearm at an occupied motor vehicle;
>
> Someone commits an act willfully when he or she does it willingly or on purpose.
>
> Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to disturb, defraud, annoy, or injure someone else. . . .

2 CT 485.

### B.  The Clearly Established Federal Law

Erroneous jury instructions do not support federal habeas relief unless the infirm instruction so infected the entire trial that the resulting conviction violates due process. Estelle, 502 U.S. at 67-68; Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ('[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]"). The challenged instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record overall. Estelle, 502 U.S. at 72. Moreover, relief is only available if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. Id. at 72-73.

### C.  The State Court's Ruling

The California Court of Appeal ruled as follows:

> Defendant next contends the trial court's answer to a jury question may have confused the jury about the mental state required by section 246. We are not persuaded.

12

The jury asked: "We require the definition of the word 'Intent' as it is written under the Definition of Maliciously." The trial court, after consulting with counsel, replied: "Please refer to instruction 965 (p. 31) and instruction 252 (p. 12) and any other instruction you find appropriate on this issue."

Instruction No. 965 defined the crime of shooting at an occupied vehicle, and defense counsel agreed that the jury should be referred back to that instruction. Instruction No. 252 defined general and specific intent, and specified that shooting at an occupied vehicle was a general intent crime, merely requiring defendant "intentionally [did] a prohibited act" as defined in the substantive crime instruction.

A trial court has great latitude in determining how to respond to a jury question about instructions, and may choose to refer the jury back to the instructions already given, if they are adequate. (See § 1138; People v. Moore (1996) 44 Cal.App.4th 1323, 1331.) In a capital case where the jury asked for clarification of malice, our Supreme Court upheld the trial court's decision to reread the relevant instructions already given. (People v. Gonzalez (1990) 51 Cal.3d 1179, 1212-1213.) Similarly, in this case, the trial court referred the jury back to intent instructions, as well as any other instructions the jury thought relevant to its concerns. This approach is not erroneous in and of itself. The jury did not ask any additional questions on this topic.

Defendant contends the trial court's answer must have exacerbated whatever concern the jury originally had, but does not directly challenge any of the instructions given. Defendant asserts, however, that shooting at an occupied vehicle is a "hybrid" crime that requires neither general nor specific intent, but requires only that defendant act "maliciously," which he asserts "requires its own [] peculiar mental status." Although we agree that section 246, as applicable to this case, required a mental state finding that defendant maliciously and willfully discharged a firearm at a motor vehicle (§ 246), it does not require that the actor intended some further consequence or objective, and therefore it is properly deemed to be a general intent crime. (See Ramirez, supra, 45 Cal.4th at pp. 985, fn. 6, 990; Overman, supra, 126 Cal.App.4th at pp. 1356, 1361 ["No specific intent to strike the target, kill or injure persons, or achieve any other result beyond shooting at or in the general vicinity or range of the target is required"].)

Lodged Doc. 10 at 5-6.

D. Objective Reasonableness Under § 2254(d)

The state court's resolution of this issue involved no unreasonable application of the U.S. Supreme Court's due process jurisprudence. Petitioner has identified no Supreme Court authority that was unreasonably applied here, and the undersigned is aware of none. Neither on appeal nor in habeas has petitioner even identified anything substantively incorrect about the instructions at

13

1    issue, or challenged their use in the first instance.[7]  Accordingly, there can have been no due

2    process violation in directing the jury to review them in the context of their deliberations or in

3    response to the note.  Petitioner argues that the mid-deliberation instruction had the effect of

4    reducing the prosecutor's burden of proof, ECF No. 1 at 22, but the court is unpersuaded.  The

5    jury was correctly instructed on the burden and standard of proof, the elements of all charged

6    offenses and allegations, and the intent requirements for each.  The jury is presumed to have

7    followed those instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  There is accordingly

8    no likelihood that the mid-deliberation instruction can have been applied unconstitutionally.  See

9    Estelle, 502 U.S. at 72-73.

10         III.    Claim Three: Sentence Violates Eighth Amendment Proportionality Requirement

11                 A.  Petitioner's Allegations and Pertinent State Court Record

12         Petitioner claims that his aggregate sentence of 30 years to life constitutes cruel and

13   unusual punishment in violation of the Eighth Amendment.  ECF No. 1 at 14, 24-26.

14                 B.  The Clearly Established Federal Law

15         The Eighth Amendment prohibits not only "barbaric punishments," Solem v. Helm, 463

16   U.S. 277, 284 (1983), but also "extreme sentences that are 'grossly disproportionate' to the

17   crime," Harmelin v. Michigan, 501 U.S. 957, 1001 (1991).  Strict proportionality between offense

18   and sentence is not constitutionally required.  Id.  The "gross disproportionality principle" applies

19   to sentences for terms of years.  Lockyer v. Andrade, 538 U.S. 63, 72 (2003).  Such a sentence

20   will only constitute cruel and unusual punishment in "rare and extreme case[s]."  Id. at 73.

21                 C.  The State Court's Ruling

22         The California Court of Appeal ruled in pertinent part as follows:

23              Defendant contends his sentence of 30 years to life in prison
                constitutes cruel or unusual punishment, blending claims based on
24              analogous California Constitution and United States Constitution
                provisions. We deem the contention forfeited and decline to find
25              defendant's trial counsel provided ineffective assistance by failing to

26   _____

27   [7] To the extent petitioner challenges the state court's characterization of the intent required by
     Cal. Penal Code § 246, that is a state law issue that this court may not consider.  See Bradshaw v.
28   Richey, 546 U.S. 74, 76 (2005).

preserve the claim, because we concluded on the merits that his sentence was not constitutionally infirm.

Because defendant failed to challenge his sentence on this basis in the trial court, he has forfeited his challenge on appeal. (See People v. Kelley (1997) 52 Cal.App.4th 568, 583.) However, because defendant claims ineffective assistance of counsel caused his failure to previously argue his sentence was cruel, we reach the merits of his claim.

"It is a rare case that violates the prohibition against cruel and/or unusual punishment." (People v. Carmony (2005) 127 Cal.App.4th 1066, 1072.) Although we acknowledge that defendant's punishment was significant, this is not such a "rare" case. (See People v. Martinez (1999) 76 Cal.App.4th 489, 493-498 [affirming 30 year-to-life sentence for attempted murder with a firearm]; see also People v. Abundio (2013) 221 Cal.App.4th 1211, 1213, 1217-1221 [affirming life without parole plus one-year sentence for 18-year-old defendant who stabbed victim during drug robbery, rejecting cruel punishment claim].) The sentence imposed in this case illustrates the Legislature's desire to severely punish those convicted of shooting at occupied vehicles, assaulting people with firearms, and intentionally discharging firearms causing great bodily injury. Applying that legislative determination to the facts of this case does not "shock[] the conscience [or] offend[] fundamental notions of human dignity" (People v. Mantanez (2002) 98 Cal.App.4th 354, 358) such that we are inclined to question it. Defendant's sentence of 30 years to life is not constitutionally infirm.

Lodged Doc. 10 at 6-7.

    D.  Procedural Default

Respondent contends that this claim is barred by the procedural default doctrine.  ECF No. 11 at 27.  Where a state court has denied a claim on independent and adequate state law grounds, including a procedural rule, federal habeas review is generally barred.  Walker v. Martin, 562 U.S. 307, 315 (2011).  Here, while the state appellate court did say the claim had been forfeited, it also proceeded to address and rule on the merits of the issue.  Rather than considering whether a forfeited claim is nonetheless exhausted by its substantive resolution in the context of an ineffective assistance claim, the undersigned elects to bypass the default issue because the Eighth Amendment claim may be easily disposed of on its merits.  See Batchelor v. Cupp, 693 F.2d 859, 864 (9th Cir. 1982) (court may deny relief on the merits without ruling on procedural default).

    E.  Objective Unreasonableness Under § 2254(d)

The state court's resolution of this issue cannot be considered objectively unreasonable in

15

light of clearly established federal law.  In <u>Harmelin</u>, 501 U.S. at 961, 994-96, the U.S. Supreme Court upheld a mandatory sentence of life without the possibility of parole for a defendant convicted of possessing cocaine, although it was his first felony offense.[8]  Petitioner's sentence includes a possibility of parole, and his offense was violent.  No Supreme Court precedent has found a sentence like petitioner's, for a similar crime, to be one of the rare cases that is "grossly disproportionate" in violation of the Eighth Amendment.  Without such precedent federal habeas relief is barred by section 2254(d), because the state court's judgment cannot have unreasonably applied the Supreme Court's disproportionality jurisprudence.  If a life without parole sentence for non-violent drug offenses does not offend the Constitution, then it cannot be objectively unreasonable to conclude that 30 years to life for assault with a firearm causing serious bodily injury does not offend the Constitution.

Even without reference to AEDPA standards, the Eighth Amendment claim fails. Petitioner cannot plausibly contend that the disproportionality in his case is greater than in <u>Harmelin</u>.  Moreover, "[a] punishment within legislatively mandated guidelines is presumptively valid."  <u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 930 (9th Cir. 1998) (citing <u>Rummel v. Estelle</u>, 445 U.S. 263, 272 (1980)).  "Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on [E]ighth [A]mendment grounds."  <u>United States v. McDougherty</u>, 920 F.2d 569, 576 (9th Cir. 1990).  Petitioner's sentence was authorized by California law, and was not grossly disproportionate to his offense.[9]  Accordingly, this claim fails under any standard of review.

////

---

[8]  In the context of recidivist sentencing, the Court has upheld life sentences even for non-violent property crimes.  <u>See</u> <u>Rummel v. Estelle</u>, 445 U.S. 263, 265-66 (1980) (upholding a life sentence with the possibility of parole, imposed under a Texas recidivist statute, for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years); <u>Ewing v. California</u>, 538 U.S. 11 (2003) (upholding indeterminate life sentence for grand theft, under California's "three-strikes" statute); <u>Lockyer v. Andrade</u>, <u>supra</u> (affirmance of "three strikes" life sentence for petty theft not objectively unreasonable under clearly established federal law).

[9]  Petitioner's reprise of his general sentencing arguments is without effect.  The Eighth Amendment question is not whether a lesser sentence might have been more appropriate, and the trial court's exercise of its sentencing discretion is not reviewable here.

1    IV.    <u>Claim Four: Ineffective Assistance of Counsel in Failing to Raise Cruel and Unusual</u>

2    <u>Punishment Claim</u>

3    A.  <u>Petitioner's Allegations and Pertinent State Court Record</u>

4    Petitioner alleges in conclusory terms that trial counsel provided ineffective assistance, in

5    violation of the Sixth Amendment, by failing to challenge the sentence on cruel and unusual

6    punishment grounds. ECF No. 1 at 14, 26.

7    B.  <u>The Clearly Established Federal Law</u>

8    To establish a constitutional violation based on ineffective assistance of counsel, a

9    petitioner must show (1) that counsel's representation fell below an objective standard of

10    reasonableness, and (2) that counsel's deficient performance prejudiced the defense. <u>Strickland v.</u>

11    <u>Washington</u>, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an

12    adverse effect on the defense. There must be a reasonable probability that, but for counsel's

13    errors, the result of the proceeding would have been different. <u>Id.</u> at 693-94. The court need not

14    address both prongs of the <u>Strickland</u> test if the petitioner's showing is insufficient as to one

15    prong. <u>Id.</u> at 697.

16    C.  <u>The State Court's Ruling</u>

17    The California Court of Appeal addressed this issue together with the substantive Eighth

18    Amendment issue, as set forth regarding Claim Three. The court concluded: "Because

19    defendant's claim of cruel punishment fails on the merits, his trial counsel was not ineffective in

20    failing to raise it." Lodged Doc. 10 at 8.

21    D.  <u>Objective Reasonableness Under § 2254(d)</u>

22    The denial of petitioner's ineffective assistance claim did not involve an unreasonable

23    application of <u>Strickland</u>. The undersigned has found that the federal constitutional challenge to

24    petitioner's sentence lacks merit even without application of AEDPA's deferential standard.

25    Accordingly, raising the issue at sentencing would have been futile and trial counsel cannot be

26    faulted for having failed to do so. Even if the Eighth Amendment claim was sufficiently arguable

27    that a zealous advocate might have felt compelled to raise it, petitioner cannot establish prejudice

28    because there is no reasonable likelihood that he would have prevailed. The state court therefore

1    did not unreasonably apply <u>Strickland</u> standards to petitioner's claim.

2         Moreover, in a portion of the California Court of Appeal opinion that is not reproduced

3    above in relation to Claim 3, that court rejected petitioner's argument under the California

4    Constitution and related state caselaw.  <u>See</u> Lodged Doc. 10 at 7-8 (discussing <u>People v. Dillon</u>,

5    34 Cal.3d 441 (1983)).  This court must accept the correctness of the state court's ruling on

6    matters of state law.  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).  Because petitioner's claim

7    under the state constitution also lacked merit, counsel cannot have acted deficiently in failing to

8    raise it and petitioner cannot have been prejudiced.

9         For all these reasons, the ineffective assistance of counsel claim should be denied.

10                                    <u>CONCLUSION</u>

11        For the reasons explained above, the state courts' denial of petitioner's claims was not

12   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

13   AEDPA standards, petitioner has not established any violation of his constitutional rights.

14   Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

15   denied.

16        These findings and recommendations are submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

18   after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

21   he shall also address whether a certificate of appealability should issue and, if so, why and as to

22   which issues.  <u>See</u> 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

23   within fourteen days after service of the objections.  The parties are advised that failure to file

24   objections within the specified time may waive the right to appeal the District Court's order.

25   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

26   DATED: July 2, 2020

27

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

28

18